UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ZACHARY J BESSO,

    Plaintiff,

v.                                               Case No: 8:19-cv-276-T-JSS

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____/

## **ORDER**

    Plaintiff, Zachary J Besso, seeks judicial review of the denial of his claim for a period of disability and disability insurance benefits. As the Administrative Law Judge's ("ALJ") decision was based on substantial evidence and employed proper legal standards, the decision is affirmed.

### **BACKGROUND**

**A.    Procedural Background**

    Plaintiff filed an application for a period of disability and disability benefits on June 4, 2014.[1] (Tr. 12, 211–12.) The Commissioner denied Plaintiff's claims both initially and upon reconsideration. (Tr. 85–98, 124–41.) Plaintiff then requested an administrative hearing. (Tr. 157–58.) Upon Plaintiff's request, the ALJ held a hearing at which Plaintiff appeared and testified. (Tr. 39–84.) Following the hearing, the ALJ issued an unfavorable decision finding Plaintiff not disabled and accordingly denied Plaintiff's claims for benefits. (Tr. 12–23.) Subsequently, Plaintiff requested review from the Appeals Council, which the Appeals Council denied. (Tr. 1–

---

[1] Plaintiff previously filed an application in September of 2013 (Tr. 209–10), which was denied. (Tr. 86, 224.) Rather than appeal that denial, Plaintiff filed a new application. (Tr. 211–12.)

3.) Plaintiff then timely filed a Complaint with this Court. (Dkt. 1) The case is now ripe for review under 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3).

### B. Factual Background and the ALJ's Decision

Plaintiff, who was born in 1971, claimed disability beginning on June 1, 2013. (Tr. 211–12.) Plaintiff has a bachelor's degree in business administration. (Tr. 45.) Plaintiff's past relevant work experience included work as a customer service representative, a schoolteacher, an advertising salesperson, a telemarketer, and an insurance sales agent. (Tr. 22.) Plaintiff alleged disability due to right vocal cord paralysis, status-post cervical fusion surgery, flat foot in right foot, low testosterone, attention deficit disorder, depression, high blood pressure, and gout. (Tr. 228.)

In rendering the decision, the ALJ concluded that Plaintiff had not performed substantial gainful activity since June 1, 2013 the alleged onset date. (Tr. 14.) After conducting a hearing and reviewing the evidence of record, the ALJ determined that Plaintiff had the following severe impairments: "degenerative disc disease; right vocal cord paralysis; bilateral rotator cuff tendinitis; and carpal tunnel syndrome." (Tr. 14.) Notwithstanding the noted impairments, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 16.) The ALJ then concluded that Plaintiff retained a residual functional capacity ("RFC") to

> perform light work as defined in 20 CFR 404.1567(b) except the claimant can lift and carry 20 pounds occasionally and 10 pounds frequently. The claimant can sit for a period of six hours; stand and/or walk for a period of six hours. The claimant is limited to frequent reaching overhead to the left, and frequently reaching overhead to the right. For all other reaching, he can reach frequently to the left and right. The claimant can climb ramps and stairs frequently, climb ladders, ropes and scaffolds frequently and balance frequently, but is limited to occasional stooping, kneeling, crouching and crawling. The claimant can work at unprotected heights frequently, mov[e] mechanical parts frequently, work in dust, odors, fumes and pulmonary irritants occasionally, in vibration frequently, and in a moderate noise

level.  The claimant can communicate orally occasionally and communicate continuously orally on an occasional basis.

(Tr. 16.)  In formulating Plaintiff's RFC, the ALJ considered Plaintiff's subjective complaints and determined that, although the evidence established the presence of underlying impairments that reasonably could be expected to produce the symptoms alleged, Plaintiff's statements as to the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with the record.  (Tr. 19.)

Considering Plaintiff's noted impairments and the assessment of a vocational expert ("VE"), however, the ALJ determined that Plaintiff could not perform his past relevant work.  (Tr. 22.)  Given Plaintiff's background and RFC, the VE testified that Plaintiff could perform other jobs existing in significant numbers in the national economy, such as production inspection, small products assembler, and marker.  (Tr. 23.)  Accordingly, based on Plaintiff's age, education, work experience, RFC, and the testimony of the VE, the ALJ found Plaintiff not disabled.  (Tr. 23.)

**APPLICABLE STANDARDS**

To be entitled to benefits, a claimant must be disabled, meaning that the claimant must be unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  A "physical or mental impairment" is an impairment that results from anatomical, physiological, or psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.  42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Social Security Administration, in order to regularize the adjudicative process, promulgated the detailed regulations currently in effect.  These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled.  20 C.F.R. § 416.920.  If an

individual is found disabled at any point in the sequential review, further inquiry is unnecessary. 20 C.F.R. § 416.920(a). Under this process, the ALJ must determine, in sequence, the following: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment, i.e., one that significantly limits the ability to perform work-related functions; (3) whether the severe impairment meets or equals the medical criteria of 20 C.F.R. Part 404, Subpart P, Appendix 1; and, (4) whether the claimant can perform his or her past relevant work. If the claimant cannot perform the tasks required of his or her prior work, step five of the evaluation requires the ALJ to decide if the claimant can do other work in the national economy in view of the claimant's age, education, and work experience. 20 C.F.R. § 416.920(a). A claimant is entitled to benefits only if unable to perform other work. *Bowen v. Yuckert*, 482 U.S. 137, 140–42 (1987); 20 C.F.R. § 416.920(g).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See* 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).

In reviewing the Commissioner's decision, the court may not decide the facts anew, re-weigh the evidence, or substitute its own judgment for that of the ALJ, even if it finds that the evidence preponderates against the ALJ's decision. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The Commissioner's failure to apply the correct law, or to give the reviewing

court sufficient reasoning for determining that he or she has conducted the proper legal analysis, mandates reversal. *Keeton*, 21 F.3d at 1066. The scope of review is thus limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).

## ANALYSIS

Plaintiff challenges the ALJ's decision on the following grounds: (1) the ALJ erred in formulating the RFC and (2) the ALJ failed to find a severe mental impairment. For the reasons that follow, neither contention warrants reversal.

### A. RFC

Plaintiff argues that the ALJ erred in several respects in formulating the RFC. (Dkt. 22 at 4–14.) Specifically, Plaintiff argues that the ALJ erred in considering Dr. Nofsinger's opinion (Dkt. 22 at 4–6), that the ALJ failed to consider the combined effect of Plaintiff's impairments (Dkt. 22 at 7–9), that the ALJ erred in considering the opinion of Dr. Karatinos (Dkt. 22 at 9–13), and that the ALJ erred in giving great weight to the opinion of the State agency consultants (Dkt. 22 at 13–14).

#### 1. Dr. Nofsinger's Opinion

An ALJ will give controlling weight to the medical opinion of a treating physician if the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2). If an ALJ does not give the treating physician's medical opinion controlling weight, the ALJ will apply the following factors to determine what weight to give the medical opinion: (1) the length of the treatment relationship and the frequency of examination; (2) the

nature and extent of the treatment relationship; (3) evidentiary support of the medical opinion; (4) consistency of the opinion with the record as a whole; (5) whether or not the opinion was rendered by a specialist; and (6) any other factors brought to the attention of the ALJ to support or contradict the opinion. 20 C.F.R. § 404.1527(c)(2).

The opinion of a treating physician is generally given more weight; however, an ALJ may disregard or discount a treating physician's opinion for good cause. *Id.*; *see Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011). Good cause exists "when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Id.* (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004)). The ALJ must clearly articulate the reasons for discounting a treating physician's opinion. *Hantzis v. Comm'r of Soc. Sec.*, 686 F. App'x. 634, 636 (11th Cir. 2017). "When the ALJ's articulated reasons for assigning limited weight to a treating physician's opinion are supported by substantial evidence, there is no reversible error." *Id.* at 636–37. Accordingly, the Court's review of this issue is limited to determining whether the ALJ articulated good cause for giving little weight to the treating source's opinions, and whether substantial evidence supports the ALJ's reasons for doing so. *See Gonzalez v. Comm'r of Soc. Sec.*, No. 8:16–cv–1646–T–JSS, 2017 WL 4054510, at *3 (M.D. Fla. Sept. 14, 2017).

Dr. Nofsinger treated Plaintiff for his throat problems and opined that Plaintiff's "prognosis was poor, and he would need periodic breaks from talking due to vocal fatigue." (Tr. 21, 979–98.) The ALJ gave partial weight to this opinion, finding that the opinion that Plaintiff's "prognosis is 'poor' is in direct contradiction with Dr. Nofsinger's treatment notes in which he opined that the claimant had 'good' prognosis with voice therapy.'" (Tr. 21, 805.) This provides good cause for

the ALJ to give partial weight to Dr. Nofsinger's opinion. *See Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159 (11th Cir. 2004) (finding good cause to discredit a treating physician's opinion because it was "inconsistent with his own treatment notes, unsupported by the medical evidence, and appear[ed] to be based primarily on [the claimant's] subjective complaints of pain").

Nonetheless, the ALJ found Dr. Nofsinger's opinion that Plaintiff would need breaks from speaking to be "consistent with the overall medical evidence of record." (Tr. 21.) Accordingly, the ALJ limited Plaintiff to occasional oral communication. (Tr. 16, 21.) Plaintiff states that "occasional" communication means up to one-third of the day and argues that this contradicts Dr. Nofsinger's opinion. (Dkt. 22 at 5–7.) In support, Plaintiff points to a treatment note, which states that Plaintiff can speak for two hours at a time. (Tr. 799.) However, the Court disagrees that this note shows limitations greater than those found by the ALJ. "The Social Security Administration defines 'occasional' as 'occurring from very little up to one-third of the time, and would generally total no more than about 2 hours of an 8-hour workday.'" *Windsor v. Berryhill*, No. 1:15-cv-391-GMB, 2017 WL 1147465, *4 (M.D. Ala. Mar. 27, 2017) (quoting Social Security Ruling ("SSR") 96-9P, 1996 WL 374185 (July 2, 1996)). Plaintiff also testified that after he takes breaks from speaking, his voice will "come back fully" after fifteen minutes to an hour (Tr. 59), which would then allow Plaintiff to communicate more. Further, the VE testified that even if Plaintiff was strictly limited to communicating no more than "two hours out of an eight-hour workday," Plaintiff would still be able to perform the jobs identified. (Tr. 73–74.)

Thus, Dr. Nofsinger's note that Plaintiff can speak for up to two hours at a time does not show that Plaintiff is more limited than the ALJ's finding that Plaintiff may communicate orally occasionally.

Ultimately, it is strictly the ALJ's duty to determine the claimant's RFC. *See Denomme v. Comm'r, Soc. Sec. Admin.*, 518 F. App'x 875, 877–78 (11th Cir. 2013). While opinion evidence is helpful, it is not dispositive. *Carson v. Comm'r of Soc. Sec. Admin.*, 300 F. App'x 741, 743 (11th Cir. 2008); *see also Williams v. Comm'r, Soc. Sec. Admin.*, 580 F. App'x 732, 734 (11th Cir. 2014) (explaining that "the ALJ may reject the opinion of *any* physician when the evidence supports a contrary conclusion") (emphasis in original). It is the ALJ's obligation to consider all evidence of record and to determine the RFC. *See Spivey-Adams v. Acting Comm'r of Soc. Sec.*, No. 3:16–CV–1134–J–PDB, 2017 WL 4297246, at *12 (M.D. Fla. Sept. 28, 2017) (holding that the ALJ "fulfilled her duty under the regulations to assess Spivey-Adams's RFC in light of all the evidence in the record"). Because Dr. Nofsinger's opinion supports the ALJ's conclusion, and because Plaintiff identifies no other evidence to suggest Plaintiff is more limited, substantial evidence supports the ALJ's finding that Plaintiff is limited to occasional oral communication.

**2. Combined Effects**

Plaintiff argues that the ALJ failed to consider the combined effect of all of Plaintiff's impairments. (Dkt. 22 at 7–9.) Specifically, Plaintiff primarily argues that the ALJ failed to consider the effect of Plaintiff's somatic symptom disorder ("SSD") diagnosis.[2] (Dkt. 22 at 8–9.) However, a diagnosis alone does not necessarily show an impact on a claimant's ability to work. *See Wind v. Barnhart*, 133 F. App'x 684, 690 (11th Cir. 2005) (holding that "a diagnosis or a mere showing of 'a deviation from purely medical standards of bodily perfection or normality' is insufficient; instead, the claimant must show the effect of the impairment on her ability to work")

---

[2] Plaintiff also points to his subjective complaints of fatigue. (Dkt. 22 at 8–9.) However, the ALJ found that Plaintiff's "statements concerning the intensity, persistence[,] and limiting effects" of his symptoms to be "not entirely consistent with the medical evidence and other evidence in the record." (Tr. 19.) Plaintiff does not challenge this finding. *See Sanchez v. Comm'r of Soc. Sec.*, 507 F. App'x 855, 856 n.1 (11th Cir. 2013) (finding that the plaintiff "abandoned any challenge" to issues not explicitly raised).

(quoting *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986)). Although Plaintiff speculates that the combined effect of his conditions "could be a limitation to speaking and oral communication of no more than 60 minutes" (Dkt. 22 at 9), Plaintiff identifies no evidence to support such a limitation and, in any event, it is the ALJ's responsibility to determine the RFC. *See Denomme*, 518 F. App'x at 877–78.

Although the ALJ did not explicitly discuss the impact of Plaintiff's SSD—presumably because the ALJ found no effect on Plaintiff's ability to work—there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his or her decision, so long as the decision is not "a broad rejection" that leaves the Court with insufficient information to determine whether the ALJ considered the claimant's medical condition as a whole. *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005). Moreover, an ALJ's statement that she considered all symptoms in determining claimant's RFC is sufficient "to demonstrate that the ALJ considered all necessary evidence." *Tuggerson-Brown v. Comm'r of Soc. Sec.*, 572 F. App'x 949, 951 (11th Cir. 2014) (finding the ALJ's discussion of the combined effects of claimant's impairments sufficient because the ALJ discussed the non-severe impairments in the ALJ's assessment of claimant's RFC); *Wheeler v. Heckler*, 784 F.2d 1073, 1076 (11th Cir. 1986) (quoting the ALJ and finding that it was "clear" that the ALJ considered claimant's impairments in combination because the ALJ stated that "'based upon a thorough consideration of all evidence, the ALJ concludes that appellant is not suffering from any impairment, *or a combination of impairments* of sufficient severity to prevent him from engaging in any substantial gainful activity.'") (emphasis in original).

In this case, the ALJ, explicitly considered "all symptoms" (Tr. 16), which is sufficient "to demonstrate that the ALJ considered all necessary evidence." *Tuggerson-Brown*, 572 F. App'x at 951. Further, the ALJ went on to thoroughly discuss and consider all evidence that might limit

Plaintiff, including non-severe impairments, in formulating the RFC. (Tr. 16–21.) Thus, it is clear that the ALJ considered Plaintiff's medical condition as a whole, *see Dyer*, 395 F.3d at 1211, and the effect of Plaintiff's impairments individually and in combination. *See Wheeler*, 784 F.2d at 1076.

### 3. Dr. Karatinos's Opinion

Next, Plaintiff argues that the ALJ erred in discrediting the opinion of Dr. Gillian Karatinos. (Dkt. 22 at 9–13.) As noted above, an ALJ may disregard or discount a treating physician's opinion for good cause, such as "when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Winschel*, 631 F.3d at 1179 (quoting *Phillips*, 357 F.3d at 1241). If the ALJ clearly articulates the reasons for discounting an opinion, and those reasons are supported by substantial evidence, "there is no reversible error." *Hantzis*, 686 F. App'x at 636–37.

In April of 2016, Dr. Karatinos found Plaintiff to be "significantly limited by his depression." (Tr. 20, 665–69.) Additionally, in "July and August of 2017, Dr. Karatinos submitted additional medical source statements in which she opined that [Plaintiff] is severely limited." (Tr. 20, 824–32, 924–30.) The ALJ gave little weight to the assessments of Dr. Karatinos, finding that they were "not well supported by the medical evidence of record" or Dr. Karatinos's "own treatment notes." (Tr. 20.) This is good cause to discredit Dr. Karatinos's opinion. *See Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159 (11th Cir. 2004) (finding good cause to discredit a treating physician's opinion because it was "inconsistent with his own treatment notes, unsupported by the medical evidence, and appear[ed] to be based primarily on [the claimant's] subjective complaints of pain").

Additionally, substantial evidence supports the ALJ's decision. First, Dr. Karatinos's opinion is generally unsupported by objective evidence. *See* 20 C.F.R. § 404.1527(c)(3) ("The more a medical source presents relevant evidence to support a medical opinion, particularly medical signs and laboratory findings, the more weight we will give that medical opinion. The better an explanation a source provides for a medical opinion, the more weight we will give that medical opinion."). In fact, Dr. Karatinos's opinion is contradicted by her own treatment notes, which generally show unremarkable mental status examinations. *See Crawford*, 363 F.3d at 1159. For example, as noted by the ALJ, "Dr. Karatinos opined that the claimant would have significant difficulty managing stress, yet the record shows that she noted the claimant was doing well coping with 'tremendous' home stress, including the overdose and subsequent hospitalization of his daughter." (Tr. 20.) Dr. Karatinos's notes also reflect that Plaintiff saw improvement on medication and even reported feeling "less depressed." (Tr. 697, 704, 710.)

Second, Dr. Karatinos's opinion is also contradicted by Plaintiff's own testimony. *See Harrison v. Comm'r of Soc. Sec.*, 569 F. App'x 874, 877 (11th Cir. 2014) ("Also, an ALJ does not need to give a treating physician's opinion considerable weight if the claimant's own testimony regarding her daily activities contradicts that opinion."). Plaintiff testified that his "most disabling" condition is his voice. (Tr. 47.) As for his mental health, Plaintiff reported attending mental health counseling monthly and reporting every sixty days for medication management. (Tr. 64.) The only limitations Plaintiff reported from his mental health was that "[c]rowds make [him] a little anxious." (Tr. 64.) As noted by the ALJ, Plaintiff remains "the primary care taker for his school-aged children and he reported performing household chores, driving, shopping, and taking care of his finances." (Tr. 20.)

Third, Dr. Karatinos's opinion is contradicted by the other evidence of record. *See* 20 C.F.R. § 404.1527(c)(4) ("Generally, the more consistent a medical opinion is with the record as a whole, the more weight we will give to that medical opinion."). In particular, as discussed further below, the ALJ properly relied on the state agency consultants' opinions, which found that Plaintiff's "mental impairments are non-severe as they result in no more than mild limitation in any of the functional domains." (Tr. 21). *See Carson v. Comm'r of Soc. Sec. Admin.*, 300 F. App'x 741, 743 (11th Cir. 2008) (affirming the rejection of a treating physician's opinion because other evidence, including "state agency medical consultant reports" contradicted the opinion); *see also Cruz v. Comm'r of Soc. Sec. Admin.*, 406 F. Supp. 3d 1337, 1340 (M.D. Fla. 2019) (explaining that the "opinions of state agency physicians can outweigh the contrary opinion of a treating physician if that opinion has been properly discounted") (internal quotations omitted). Because the ALJ articulated good cause, supported by substantial evidence, for discrediting Dr. Karatinos's opinion, there is no reversible error. *See Hantzis*, 686 F. App'x. at 636–37.

### 4. State Agency Consultants' Opinions

Plaintiff also argues that the ALJ erred in giving great weight to the opinions of the state agency consultants. (Dkt. 22 at 13–14.) Under the Social Security regulations, an ALJ must consider the opinions of non-examining physicians, including state agency psychological consultants. 20 C.F.R. § 404.1527(f); *Jarrett v. Comm'r of Soc. Sec.*, 422 F. App'x 869, 873 (11th Cir. 2011). In determining the weight due to a non-examining physician's opinion, the ALJ considers factors such as the examining or treating relationship, whether the opinion is well-supported, whether the opinion is consistent with the record, and the physician's specialization. *Luterman v. Comm'r of Soc. Sec.*, 518 F. App'x 683, 689 (11th Cir. 2013) (citing 20 C.F.R. §§ 404.1527(c), 416.927(c)). Generally, the opinions of a non-treating or non-examining physician

are given less weight than those of examining or treating physicians and, standing alone, do not constitute substantial evidence. *Poellnitz v. Astrue*, 349 F. App'x 500, 502 (11th Cir. 2009).

However, state agency consultants are considered experts in Social Security disability evaluation and their opinions are entitled to great weight if supported by evidence in the record. *See* 20 C.F.R. §§ 404.1527(e)(2)(i) & 416.927(e)(2)(i) (stating that, while the ALJ is not bound by the findings of a State Agency medical consultant, the ALJ should consider such a consultant to be both "highly qualified" and an "expert" in Social Security disability evaluation); *Surber v. Comm'r of Soc. Sec.*, No. 3:11–cv–1235–J–MCR, 2013 WL 806325, at *5 (M.D. Fla. March 5, 2013) ("State agency medical consultants are non-examining sources who are highly qualified physicians and experts in Social Security disability evaluation, and their opinions may be entitled to great weight if supported by evidence in the record.").

Plaintiff argues that the ALJ may not credit a non-examining physician over a treating physician without good cause to discredit the treating physician. (Dkt. 22 at 13–14.) However, as discussed above, the ALJ articulated good cause, supported by substantial evidence, for discrediting Dr. Karatinos's opinion. *See* discussion *supra* Section A.3. Instead, the ALJ considered the entire record and found the state agency consultants' opinions to be supported by the evidence. *See Surber*, 2013 WL 806325, at *5. Moreover, "the ALJ did not err by relying on the opinions of the non-treating physicians, taken alone, in a way that left its decision unsupported by substantial evidence" because "[t]he evidence supported a contrary conclusion to Dr. [Karatinos's] opinion, and the ALJ was not prohibited from reaching that conclusion simply because non-treating physicians also reached it." *Forrester v. Comm'r of Soc. Sec.*, 455 F. App'x 899, 902–03 (11th Cir. 2012); *Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985) (explaining

that the ALJ may reject the opinion of any physician if the evidence supports a contrary conclusion).

### B. Severe Impairment

Finally, Plaintiff argues that the ALJ erred by failing to find a severe mental impairment. (Dkt. 22 at 14–15.) At step two of the sequential evaluation process, the ALJ must consider the medical severity of the claimant's impairments. 20 C.F.R. § 404.1520(a)(4)(ii). When considering the severity of the claimant's medical impairments, the ALJ must determine whether the impairments, alone or in combination, significantly limit the claimant's physical or mental ability to do basic work skills. *Phillips*, 357 at 1237 (citing 20 C.F.R. § 404.1520(c)). In this step of the sequential process, the claimant bears the burden of proof that he or she suffers from a severe impairment or combination of impairments. *Gibbs v. Barnhart*, 156 F. App'x 243, 246 (11th Cir. 2005). An impairment is not severe "only if the abnormality is so slight and its effect so minimal that it would clearly not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." *McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986). "Basic work activities" include: (1) physical functions, such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. 20 C.F.R. § 404.1521(b)(1)–(6).

If an ALJ errs in finding that a claimant's *additional* impairments are non-severe, such error is harmless when the ALJ finds that a claimant has a severe impairment. *Heatly v. Comm'r of Soc. Sec.*, 382 F. App'x 823, 824–25 (11th Cir. 2010). This is because the ALJ has determined that step two of the sequential analysis is met and proceeds in the disability analysis. *Id.* ("Even

if the ALJ erred in not indicating whether chronic pain syndrome was a severe impairment, the error was harmless because the ALJ concluded that [claimant] had a severe impairment," which is all that is required at step two of the sequential analysis); *Tuggerson-Brown v. Comm'r of Soc. Sec.*, 572 F. App'x 949, 951 (11th Cir. 2014) ("Accordingly, even assuming that [claimant] is correct that her additional impairments were 'severe,' the ALJ's recognition of that as a fact would not, in any way, have changed the step-two analysis, and she cannot demonstrate error below."); *Burgin v. Comm'r of Soc. Sec.*, 420 F. App'x 901, 902–03 (11th Cir. 2011) ("Even assuming the ALJ erred when he concluded [claimant's] edema, sleep apnea, and obesity were not severe impairments, that error was harmless because the ALJ considered all of his impairments in combination at later steps in the evaluation process.").

In this case, at step two of the sequential evaluation process, the ALJ found that Plaintiff had severe impairments of "degenerative disc disease; right vocal cord paralysis; bilateral rotator cuff tendinitis; and carpal tunnel syndrome," (Tr. 14) and thus proceeded beyond step two. Any error in failing to find that Plaintiff suffers from *additional* severe mental health impairments would be harmless. *Packer v. Comm'r, Soc. Sec. Admin.*, 542 F. App'x 890, 892 (11th Cir. 2013). Nevertheless, the ALJ is "required to consider all impairments, regardless of severity, in conjunction with one another in performing the *latter steps* of the sequential evaluation." *Tuggerson-Brown*, 572 F. App'x at 951 (emphasis added). An ALJ's failure to consider the combination of a claimant's impairments requires reversal. *Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1268–69 (11th Cir. 2019) ("Consideration of all impairments, severe and non-severe, is required when assessing a claimant's RFC."); *Hudson v. Heckler*, 755 F.2d 781, 785 (11th Cir. 1985) (holding that failure to consider a claimant's impairments in combination "requires that the case be vacated and remanded for the proper consideration").

However, as discussed above, *see* discussion *supra* Section A.2., the ALJ stated that she considered all impairments and symptoms at steps three and four (Tr. 16), which is sufficient to show that the ALJ properly considered the combined effect of Plaintiff's impairments. *See Wilson*, 284 F.3d at 1224–25 (finding that the ALJ's statement that the claimant "'did not have an impairment *or combination of impairments* listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4'" was "evidence that he considered the combined effects of Wilson's impairments") (emphasis in original); *Jones v. Dep't of Health & Human Servs.*, 941 F.2d 1529, 1533 (11th Cir. 1991) (finding that the ALJ considered the combined effect of the claimant's impairments because the ALJ found that the claimant did "not have 'an impairment or combination of impairments listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulation No. 4'"). Additionally, the ALJ thoroughly discussed the evidence of Plaintiff's non-severe mental impairments. (Tr. 16–21.)

Thus, because the ALJ considered all of Plaintiff's impairments at the latter steps, there can be no error in failing to find an impairment severe at step two. *See Tuggerson-Brown*, 572 F. App'x at 951. *See also Delia v. Comm'r of Soc. Sec.*, 433 F. App'x 885, 887 (11th Cir. 2011) ("Because the ALJ gave full consideration to the consequences of Delia's mental impairments on his ability to work at later stages of the analysis, the error at step two was harmless and is not cause for reversal."); *Burgin v. Comm'r of Soc. Sec.*, 420 F. App'x 901, 902–03 (11th Cir. 2011) ("Even assuming the ALJ erred when he concluded [claimant's] edema, sleep apnea, and obesity were not severe impairments, that error was harmless because the ALJ considered all of his impairments in combination at later steps in the evaluation process."); *Hutchinson v. Astrue*, 408 F. App'x 324, 327 (11th Cir. 2011) (finding that the ALJ did not err in considering the combined effects of the claimant's impairments because the ALJ "specifically stated that Hutchinson did not have an

'impairment, individually or in combination' that met one of the listed impairments in evaluating step three of the process").

## CONCLUSION

Accordingly, after due consideration and for the foregoing reasons, it is

**ORDERED**:

1. The decision of the Commissioner is **AFFIRMED**; and

2. The Clerk of Court is directed to enter final judgment in favor of the Commissioner and close the case.

**DONE** and **ORDERED** in Tampa, Florida, on March 17, 2020.

_____
JULIE S. SNEED
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Counsel of Record